UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| BRENDA HOLT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | 1:13-CV-339 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| LIFE INSURANCE COMPANY OF ) | |
| NORTH AMERICA ) | |
| ) | |
| Defendant. ) | |

## **M E M O R A N D U M**

Before the Court is Plaintiff Brenda Holt's ("Holt") motion for judgment on the record in this case brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (Court File No. 15). Defendant Life Insurance Company of North America ("LINA") responded (Court File No. 17) and Holt replied (Court File No. 19). Related to the motion for judgment on the record, LINA moved to strike the Social Security Disability Insurance decision offered by Holt and any references to it (Court File No. 16). Holt responded in opposition (Court File No. 20) and LINA replied (Court File No. 21). The Court heard oral arguments from the parties. For the following reasons, the Court will **GRANT IN PART** and **DENY IN PART** Holt's motion and will **REMAND** this matter to LINA for reconsideration of Holt's disability claim.

### I. BACKGROUND

#### A. Overview

Holt, a 64-year-old former project administrator for Bechtel Corporation, was covered by

that company's long-term disability plan (the "Plan"). Holt claims she is disabled under the Plan because of fibromyalgia and related symptoms. She stopped working in January 2011 because of these problems and filed for short-term disability ("STD"), complaining of joint pain and problems thinking and sleeping (Court File No. 17-1, Administrative Record ("AR"), p. 153). LINA denied the STD claim in February 2011, noting that available medical information did not show she was unable to perform her regular occupation because of fibromyalgia symptoms (AR, p. 255). In June 2011 LINA upheld the decision on appeal (AR, p. 246).

Holt then applied for long-term disability ("LTD"), which LINA granted (AR, p. 217). The nurse case manager noted that it would be reasonable to allow additional time for treatment and recovery (*id.*). LINA continued to review Holt's claim and later terminated her LTD benefits beyond July 12, 2012, for lack of an impairment that prohibited her from performing her occupation (AR, p. 187). LINA affirmed the denial, after which Holt filed the instant suit for wrongful denial of LTD benefits.

Under the Plan, a claimant is initially considered disabled if solely because of injury or sickness she is (1) "[u]nable to perform all the material duties of his or her Regular Occupation or a Qualified Alternative" or (2) "[u]nable to earn 80% or more of his or her Indexed Covered Earnings" (AR 789). After receiving benefits for 24 months, a claimant is consider disabled if solely because of injury or sickness she is "[u]nable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience," or (2) "[u]nable to earn 80% or more of his or her Indexed Covered Earnings." *Id*. The policy gives LINA the right to obtain a physical examination by an independent physician or a functional capacity evaluation "as often as it may reasonably require"

2

(AR, p. 807). It also allows LINA to require a claimant to pursue Social Security Disability Insurance benefits. The parties agree that, pursuant to the Plan, the arbitrary and capricious standard applies to LINA's decision to terminate Holt's benefits.

### B. Medical History and Disability Determinations

Before her STD claim was denied, Holt's primary care physician, Dr. Cecil Breetzke ("Breetzke"), provided her with a note excusing her from work from January 26, 2011, to April 25, 2011, based on her general tenderness to touch; sleep and memory problems; and irritability (AR, p. 381). Rheumatologist Indra Shah saw Holt a number of times in early 2011 and concluded she suffered from (1) "polyarthralgia/fibromyalgia,"[1] (2) "[a]dhesive capsulitis of both shoulders," (3) "somewhat limited movement along the hips," (4) "[o]steoarthritis of the hands and the feet," and (5) "[h]istory of carpal tunnel syndrome" (AR, p. 453).

After LINA denied her STD claim, Dr. Breetzke indicated that Holt could return to work on June 16, 2011, but Holt maintains that she never returned to work and notes that there is no evidence in the record that she did (AR, pp. 370, 631). In May 2011 Holt saw a Mayo Clinic rheumatologist, Dr. Andy Abril ("Abril"), who conducted tests and ruled out numerous disorders, concluding that "[s]he has classic presentation for fibromyalgia, with an otherwise unremarkable joint examination" (AR, p. 441). Dr. Breetzke agreed with the fibromyalgia diagnosis and stated that she could return to work, with restrictions, on August 7, 2011 (AR, p. 607). The record does not show she did return to work.

---

[1] Fibromyalgia "is a medical condition marked by 'chronic diffuse widespread aching and stiffness of muscles and soft tissues.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 244 (6th Cir. 2007) (citing Stedman's Medical Dictionary for the Health Professions and Nursing at 541 (5th ed.2005)).

3

In July 2011, at the behest of LINA, rheumatologist Penny Chong reviewed Holt's file and concluded that she could return to work while being treated, noting that "[p]hysical impairment that precluded Ms. Holt from doing her work was not demonstrated," and that "[t]here was no significant weakness, muscle wasting, limitation of movement, deformity, synovitis or overt sensory deficit. Myofascial tenderness or tender points should not be construed as a disability" (AR, p. 594). Dr. Breetzke gave Holt permission to return to work part time in August 2011 and noted that "[p]atient is really doing quite well as far as pain is concerned" (AR, pp. 343, 337). The record does not indicate she did return to work.

Holt applied for LTD benefits in October 2011. In November 2011, Dr. Breetzke completed a form noting several limitations and restrictions and opined that Holt could not return to work because she had to take frequent naps because of her medication (AR, p. 552). In December 2011 LINA granted STD and LTD starting from July 25, 2011, based on a nurse case manager's report noting the diagnosis of fibromyalgia and neuropathy pain and concluding that "given [claimant's] age and multiple issues [with] most severe of the shoulder it would be reasonable to allow additional time for treatment and recovery" (AR, p. 63).

A clinical note from Dr. Breetzke in February 2012 showed some positive signs, stating that "patient is really doing quite well. The pain is minimal but right now she has some elbow pain. Her energy level is improved. Her disease management is doing quite well as far as diabetes is concerned and the fibromyalgia is concerned. The issue that is still bothering her is that she continues to increase in her weight" (AR, p. 742). And in April of that year he noted that Holt "really is doing quite well. She certainly has not been cured of fibromyalgia but the therapy program that we are going through right now is keeping her fairly well-controlled. She does have

4

bouts of depression that come now and then but they are short lived" (AR, p. 741).

Pursuant to a June 2012 request for additional information on Holt's health, Dr. Breetzke completed a Physical Ability Assessment, in which he stated that Holt could only "occasionally" ("0-2.5 Hrs/Day [or] 1/3 of the Day") do each activity listed, except for seeing and hearing, which he said she could frequently do (AR, p. 752). The activities she could do only occasionally included sitting, standing, walking, reaching, fine manipulation, grasping, and other physical activities (*id*.).

On July 2, 2012, a LINA nurse case manager determined that these restrictions and limitations were not evidenced by Holt's file (AR, p. 33). She stated that the treatment notes did not include abnormal examination findings and that "[o]verall there is a lack of abnormal physical exam measurements to support functional limitations. Ongoing chronic management of conditions could be concurrent with work capacity" (AR 735).

Based on the case manager's analysis, LINA ceased paying LTD benefits on July 12, 2012, explaining that "the restrictions and limitations are not supported as evidenced by no significant abnormal physical exam findings regarding range of motion (ROM) or strength. The EMG results dated April 11, 2011, reported minimal radiculopathy at C6-7 and mild carpal tunnel syndrome. Labs were within normal limits, with no evidence of synovitis in your client's joints" (AR, p. 188). LINA addressed Holt's other complaints as well: "There are reported complaints of fatigue, weight gain and some difficulty keeping your client's blood sugar under control, but currently no sleep study on file or detailed mental status exam. As of April 16, 2012, the office visit note from Dr. Breetzke reports your client is doing quite well, therapy keeping your client's fibromyalgia well controlled and no significant depression symptoms" (*id*.). LINA

5

concluded that there is a "lack of exam findings to correlate with ongoing reported symptoms, functional impairment is not demonstrated. Ongoing chronic management of the reported conditions could be concurrent with work capacity" (*id*.).

The denial of benefits letter informed Holt that she could appeal the decision and submit additional information, including "[a]ny additional treatment notes form your provider(s) demonstrating limitations consistent with a decrease in functionality of a severity to support your current provider(s) restrictions" (AR, p. 188). Dr. Breetzke provided an additional opinion, which stated that Holt could only sit for 2 hours each day for 30 minutes at a time and could stand or walk 1 hour out of an 8 hour day for 10 minutes at a time (AR, p. 726). He stated she required 2 hours of bed rest during a normal workday and must rest 20 minutes for every hour of work. He also opined that she would have to be absent from work 2 to 10 days per month and could not type, write, or grasp small objects (AR, p. 726-27).

Alfonso Bello ("Bello"), a non-treating rheumatologist, then reviewed Holt's file for LINA and determined that "[t]here is nothing from a rheumatology standpoint to support any restrictions and limitations" and that "restrictions and limitations documented in the medical records are not supported by the measured limitations in the medical documentation provided for review from 7/12/12 and continuing" (AR, p. 692). He did not make contact with Holt's treating physicians, although he says he tried to reach doctors Abril and Breetzke twice each (AR, p. 191-92). In a Clarification he filed in response to Holt's request to explain his conclusion, Dr. Bello noted that "there is no clinical evidence to support the recommendations by the attending providers for the period under review. Specifically, the clinical notes do not demonstrate an active musculoskeletal condition with essentially normal examinations" (AR, p. 693). Based on

6

this, on April 5, 2013 LINA affirmed its denial of benefits.

In the final denial letter, LINA also noted it was aware Holt had been awarded SSDI benefits and that LINA had "considered it" but that "the criteria used by the Social Security Administration (SSA) may differ from the requirements of the policy under which your client is covered" (AR, p. 175). Earlier, on December 19, 2012, LINA had requested information regarding Holt's SSDI claim:

> Part of our investigation requires that we take in to consideration the Social Security Administrations (SSA) investigation of your SSDI claim. . . . If she has been awarded SSDI please provide a copy of the award notice along with any supporting documentation related to the award. Furthermore, it would be in your client's best interest if were provide a copy of the medical records in your client's SSDI claim file to include independent examinations and/or diagnostic studies the SSA may have required your client to undergo.

The record does not indicate that Holt provided information about her SSDI claim to LINA. Holt signed a waiver, however, which allowed LINA to request her SSDI file (AR, p. 545). The administrative record does include the SSDI decision, although it was issued before—and explicitly acknowledged in—LINA's final denial. Holt appealed the denial to this Court.

## II. STANDARD OF REVIEW

A challenge to an ERISA plan's benefits determination "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Here, it is undisputed that the Plan provides the Administrator with such discretion. When discretionary authority is granted to the plan administrator, as in this case, the "arbitrary and capricious standard of review is appropriate."

7

*Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (quotation marks and citation omitted). The arbitrary and capricious standard is the "least demanding form of judicial review of administrative action. . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Abbott v. Pipefitters Local Union No.* 522, 94 F.3d 236, 240 (6th Cir. 1996) (quoting *Perry v. United Food & Commercial Workers Dist. Unions* 405 & 422, 64 F.3d 238, 242 (6th Cir. 1995)). In reviewing an administrator's decision, the court may only consider "the facts known to the plan administrator at the time he made his decision." *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997).

While the arbitrary and capricious standard is highly deferential, it is not "without some teeth" and courts should not be mere "rubber stamps" for plan decisions. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). An administrator's decision should not be upheld where there is an absence of reasoning in the record to support it. *Id*. Furthermore, a conflict of interest is present when the insurer decides whether benefits should be awarded and pays for those benefits. *Gismondi v. United Techs. Corp.*, 408 F.3d 295, 299 (6th Cir. 2005). Although the conflict of interest does not alter the standard of review, it is a factor that must be considered when evaluating whether an administrator's decision was arbitrary and capricious. *Id*. at 298-99. This conflict of interest extends to physicians hired by the plan to review files. *See Darland v. Fortis Benefits Ins. Co.*, 317 F.3d 516, 528 (6th Cir. 2003), overruled on other grounds by *Black & Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) (Plan had a "clear incentive to contract with a company whose medical experts were inclined to find in its favor that [the claimant] was not entitled to continued LTD benefits.") (quotation marks and citation

omitted); *Regula v. Delta Family–Care Disability Survivorship Plan*, 266 F.3d 1130, 1143 (9th Cir. 2001) (noting the "the conflict of interest inherent when benefit plans repeatedly hire particular physicians as experts" since "these experts have a clear incentive to make a finding of 'not disabled' in order to save their employers money and to preserve their own consulting arrangements").

### III. DISCUSSION

Holt argues LINA acted arbitrarily and capriciously in determining that she was able to perform her job duties and thus terminating her benefits. The issue ultimately comes down to whether, given the facts known to LINA at the time, it can offer a "reasonable explanation" for why it disagreed with Dr. Breetzke's opinion as to Holt's physical abilities and, consequently, terminated benefits. *See Abbott*, 94 F.3d 240. LINA determined that the limitations set forth by Dr. Breetzke were not consistent with the clinical evidence. Holt counters that there is significant evidence in the record regarding Holt's pain, fatigue, and inability to concentrate, which stemmed from her fibromyalgia. Both doctors Abril and Breetzke rendered this diagnosis after extensive lab work and upon physical examination findings such a tenderness of the body (AR pp. 441, 607).

#### A. Treating Physician

Holt emphasizes that LINA and its non-treating file reviewer, Dr. Bello, reached a conclusion contrary to that of Holt's treating physician, Dr. Breetzke. Holt recognizes, however, that there is no rule mandating special deference to the treating physician. "[W]hile plan administrators may not arbitrarily reject or refuse to consider the opinions of a treating physician, they 'are not

9

obligated to accord special deference to the opinions of treating physicians.'" *Calvert v. Firstar Fin., Inc.*, 409 F.3d 286, 293 (6th Cir. 2005) (quoting *Black & Decker Disability Plan*, 538 U.S. 822 at 825) (noting that "the 'treating physician rule' . . . no longer applies in the ERISA context").

Holt also points out that the Plan allowed LINA to order a physical examination with an expert of its choice, yet LINA declined to do so and relied only on a file reviewer in making its final claim determination. Unless a plan's language "expressly bars a file review by a physician in lieu of such a physical exam," courts should view the decision to "conduct a file review rather than a physical exam as just one more factor to consider in [the] overall assessment of whether [a plan] acted in an arbitrary and capricious fashion." *Id.*, 409 F.3d at 295. While "reliance on a file review does not, standing alone, require the conclusion that [the plan] acted improperly, . . . the failure to conduct a physical examination—especially where the right to do so is specifically reserved in the plan—may, in some cases, raise questions about the thoroughness and accuracy of the benefits determination." *Id*. In the instant case, the Plan allowed but did not require LINA to order a physical examination. Although not dispositive, that LINA did not invoke this right, and instead relied on the file reviewer, weighs in Holt's favor as it "raise[s] questions about the thoroughness and accuracy of the benefits determination." *Id*.

The nature of Holt's health issues and symptoms makes LINA decision further problematic. The Sixth Circuit in *Calvert* highlighted a special problem when credibility determinations are at stake: if "the conclusions from [a non-treating physician's] review include critical credibility determinations regarding a claimant's medical history and symptomology, reliance on such a review may be inadequate." *Id.* at 297 n. 6. The Sixth Circuit reiterated this

10

concern a year later in *Smith v. Cont'l Cas. Co.*, when it held that a non-treating physician's characterization of the claimant's "subjective complaint[s]" as "out of proportion to physical findings" contributed to the arbitrary nature of the plan's denial of benefits because it involved the type of credibility determination best made by a treating physician. 450 F.3d 253, 263-64 (6th Cir. 2006). Here, given the nature of fibromyalgia, Dr. Breetzke's opinion as to Holt's physical limitations was necessarily based in large part on her subjective sensations of pain, ability to concentrate, and sleepiness. The presence of such credibility determinations increases the Court's concern with LINA's decision to rely only on a non-examining file reviewer. *See Id.*; *Calvert* at 297 n. 6. It is telling that although Dr. Bello summarized the findings of Holt's providers, which describe significant pain, his failure to discuss her pain in his analysis tends to indicate he gave little credit to her subjective sensations

### B. SSA Decision

Between the initial denial of her LTD claim and the rejection of her appeal, Holt was granted SSDI benefits. It does not appear from the record that Holt supplied LINA with the decision or records related to the decision despite LINA's general request that she provide any SSDI materials (AR pp. 182, p. 222). However, LINA does not deny that Holt signed a form giving LINA permission to request her SSDI records (AR, p. 545). LINA's decision denying Holt's appeal states that LINA "considered" the SSDI award but that "the criteria used by the Social Security Administration (SSA) may differ from the requirements of the policy under which your client is covered" (AR , p. 175).

LINA moves to strike from the record the SSDI decision granting benefits (as well as any mentioned of it), which Holt attached to her motion for judgment on the ERISA record. The

11

document was not in the administrative record and Holt never objected to the administrative record as filed. This bars the use of the SSDI decision, and the Court **STRIKES** the document from the record. *See Edens v. Cent. Benefits Nat. Life Ins. Co.*, 900 F. Supp. 928, 931 (W.D. Tenn. 1995) (explaining that the court is limited to reviewing "evidence that was actually presented to the administrator and included in the administrative record") (citing *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 n. 5) (6th Cir. 1991)). However, that does not prevent the court was considering that the administrative record shows that LINA knew of the decision, could have requested a copy of it from the SSA, stated it "considered it," yet failed to address it in any substantive way.

The Sixth Circuit has held that "an ERISA plan administrator is not bound by an SSA disability determination when reviewing a claim for benefits under an ERISA plan." *Whitaker v. Hartford Life & Accident Ins. Co.*, 121 F. App'x 86, 88 (6th Cir. 2005); *see also Calvert*, 409 F.3d at 293 (noting "the incongruity of binding an ERISA plan administrator to the SSA's disability determination, when the SSA-but not the ERISA administrator-is bound by law to accord special deference to a claimant's treating physician"). However, it is improper for a plan administrator to require a claimant to file a SSDI claim (as occurred here), but then ignore a SSDI award in its own analysis. *See Glenn v. MetLife*, 461 F.3d 660, 669 (6th Cir. 2006); *Calvert*, 409 F.3d at 295 (6th Cir. 2005). Thus the fact that LINA stated that it "considered" the successful SSDI claim yet provided no substantive explanation of why the plan disagreed with it[2] lends support to Holt's claim that LINA's determination was unreasonable.

---

[2] LINA merely noted that "the criteria used by the Social Security Administration (SSA) may differ from the requirements of the policy under which your client is covered" (AR , p. 175).

12

### C. Dr. Bello's Analysis

In the analysis portion of his main assessment, Dr. Bello concludes that "[t]here is nothing from a rheumatology standpoint to support *any* restrictions and limitations. Therefore, restrictions and limitations are not supported, as there is no documentation indicating otherwise" (AR, p. 692) (emphasis added). Dr. Bello repeats this statement or a variant of it three more times in his report. The great bulk of the report is a summary of the other doctors' findings, findings which demonstrate Holt had fibromyalgia and document Holt's symptoms (including pain, fatigue, and inability to concentrate) that underpinned the restrictions and limitations Dr. Breetzke ordered (AR, p. 689-92). Dr. Bello does not articulate why the record fails to support "*any* restrictions and limitations" (*id*.) (emphasis added).

Dr. Bello's clarification does not add much. Rather it rehashes Breetzke's ordered restrictions and limitations and then states that "[b]ased on the medical records provided for review, there are no clinical evidence to support the recommendation by the attending providers for the period under review. Specifically, the clinical notes do not demonstrate an active musculoskeletal condition with essentially normal examination" (AR, p. 693). This ignores Dr. Breetzke's clinical notes discussing Holt's ongoing problems with pain, concentration, and fatigue stemming from her fibromyalgia. It essentially ignores, or at least significantly discounts, the existence of Holt's fibromyalgia (the presence of which LINA does not contest before this court) and its symptoms, as well as the side effects caused by Holt's medication. In short, Dr. Bello appears to be implicitly making a credibility determination about Holt's subjective symptoms and their effect on her ability to perform various mental and physical tasks.

### D. Improvement in Condition

13

LINA presents several arguments in favor of their determination. It first contends that Holt was not unable to work as evidenced by her return to work in August 2011 after being diagnosed with fibromyalgia. Holt, however, asserts she did not return to work and notes that the record does not show she did.

LINA also contends that Holt's condition improved after LINA had initially granted LTD benefits. In situations where benefits are initially granted, the Court should examine whether there was improvement in the claimant's condition. *See Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321 (11th Cir. 2001); *McOsker v. Paul Revere Life. Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002) ("We are not suggesting that paying benefits operates forever as an estoppel so that an insurer can never change its mind; but unless information available to an insurer alters *in some significant way*, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments.") (emphasis added).

LINA points out that two of Dr. Breetzke's treatment notes appear to indicate Holt was improving in the months leading up to the termination of benefits. In February, 2012 Dr. Breetzke stated that "patient is really doing quite well. The pain is minimal but right now she has some elbow pain. Her energy level is improved. Her disease management is doing quite well as far as diabetes is concerned and the fibromyalgia is concerned. The issue that is still bothering her is that she continues to increase in her weight" (AR, p. 742). Then in April he noted that Holt "really is doing quite well. She certainly has not been cured of fibromyalgia but the therapy program that we are going through right now is keeping her fairly well-controlled. She does have bouts of depression that come now and then but they are short lived" (AR, p. 741).

Holt disagrees that her situation had been altered in a significant way, arguing that "the

14

Plan had previously accepted Dr. Breetzke's medical records and opinion that Ms. Holt could not perform any full time work, and without any change in the content or quality of his opinion, the Plan disregarded it and concluded instead that Ms. Holt had no restrictions or limitations at all" (Court File No. 19, p. 5). The Court notes that while medications were sometimes effective in controlling pain, by July 2012 Holt had to be prescribed the strong narcotic opioid Lortab rather than Tramadol for pain. It should also be remembered that Holt was not working (and thus not undergoing certain stresses) when her doctor stated that she was "doing quite well." That Dr. Breetzke stated she was "doing quite well" under those particular circumstances does not necessarily indicate the information available to LINA regarding her ability to work had "altere[d] in some significant way." Ultimately, Dr. Breetzke's opinion was that her symptoms necessitated certain restrictions and limitations, with which LINA disagreed.

Having previously awarded Holt benefits, LINA's decision to terminate those benefits in this instance was not based on a reasoned explanation and was arbitrary and capricious. Several factors contribute to this conclusion: (1) Dr. Bello was a non-treating reviewer dealing with the inherently subjective matter of fibromyalgia symptoms, which require credibility determinations; (2) Dr. Bello's opinion lacked substantive analysis; (3) Dr. Bello's conclusion that no restrictions and limitations whatsoever should apply was grossly at odds with treatment records and Dr. Breetzke's opinion; and (4) LINA never substantively addressed the SSDI award despite having required Holt to apply for SSDI benefits and having acknowledged the award.

## IV.    CONCLUSION

For the foregoing reasons, the Court will **GRANT IN PART** and **DENY IN PART**

Holt's motion for judgment on the ERISA record (Court File No. 15) and will **REMAND** this matter to LINA for reconsideration of Holt's disability claims in light of this decision. There being no other issues remaining for adjudication, the Court will **DIRECT** the Clerk of Court to **CLOSE** the case.

**An order shall enter:**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**